UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

      Plaintiff,

v.

THE CONTENTS OF ACCOUNT
NUMBER 1374520 AT BUTTERFIELD
BANK (BAHAMAS) LIMITED IN THE
NAME OF FCI HOLDINGS, INC.,

      Defendant *In Rem*.

_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff, the United States of America (the "United States"), by and through its undersigned counsel, to allege upon information and belief as follows:

### I. NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(A), (C), and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure, to forfeit the following asset that constitutes proceeds of wire fraud involving telemarketing, property involved in money laundering or a conspiracy to commit money laundering, and/or property traceable to such property: the contents of account number 1374520 at Butterfield Bank (Bahamas) Limited held in the name of FCI Holdings Limited (the "Defendant Account").

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3.  This Court has *in rem* jurisdiction over the Defendant Account. *See* 28 U.S.C. §§ 1345, 1355(a).

4.  Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District in which the related criminal prosecution was brought. *See* 28 U.S.C. § 1355(b)(1); 18 U.S.C. § 981(h).

### III. FACTUAL ALLEGATIONS

5.  Jeffrey Pearson ("Pearson") and others operated a telemarketing scheme from Costa Rica that targeted American victims. Pearson and his coconspirators created advertisements urging U.S. victims to call a toll-free number to learn about business opportunities to distribute goods such as beverages and greeting cards. Pearson's victims believed that they were purchasing business opportunities from an American company in which distributors would earn a profit by selling various goods, such as coffee beans or greeting cards, at high-traffic locations in the United States. In fact, victims who called the purported U.S. phone numbers reached Pearson's co-conspirators at a fraudulent telemarketing "boiler room" in Costa Rica.

6.  Once victims called the Costa Rican boiler room, Pearson and his coconspirators made numerous misrepresentations to victims, including that victims would be provided with: 1) display racks; 2) ongoing assistance with distribution; 3) a substantial inventory of goods; and 4) assistance, either directly or indirectly, in identifying profitable locations in which to place the display racks. Pearson and his co-conspirators further made misrepresentations about the income that victims could expect by selling these goods. Many victims invested $10,000 or more on the business opportunities and received nothing in return. Some victims received a supply of the goods they were supposed to distribute or display racks, but none of the promised profitable distribution

channels.

7.  From approximately May 2005 to approximately December 2008, Pearson and his co-conspirators operated the fraudulent scheme under a series of company names, including: USA Beverages, Twin Peaks Gourmet Coffee, Cards-R-Us, Premier Cards, Continental Java/Coffee Man, and Powerbrands Distributing Co.

8.  Pearson and his co-conspirators told victims that to purchase the business opportunities, they should wire funds to or through one of several banks or bank accounts in the United States. Between 2005 and 2008, at least approximately 400 individuals in the United States paid at least approximately $10 million to Pearson and his co-conspirators for these worthless business opportunities. Bank records show that victim funds wired to the U.S. accounts were transferred to different accounts at banks in Costa Rica, Panama, the Bahamas, and other locations.

9.  On October 19, 2005, the United States Federal Trade Commission brought a civil action against Pearson and several of his co-conspirators for unfair methods of competition in violation of 15 U.S.C. § 45 and other related offenses. *See* Complaint, *United States v. USA Beverages et al.*, Case No. 05-61682-CIV-LENARD, ECF No. 1. On June 28, 2006, the Court ordered Pearson and several associates to pay $2,565,610.81 in restitution to victims based on the scheme described above. *See* Default Judgments and Orders for Permanent Injunctions, *United States v. USA Beverages et al.*, Case No. 05-61682-CIV-LENARD, ECF No. 78. The defendants never paid that money to victims.

10. On November 20, 2008, a federal grand jury returned an indictment against Pearson, charging him with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, mail fraud in connection with the conduct of telemarketing in violation of 18 U.S.C. §§ 1341 and 2326, and wire fraud in connection with the conduct of telemarketing in violation of 18 U.S.C.

§§ 1343 and 2326. *See* Indictment, *United States v. Jeffrey Allen Pearson*, 08-cr-21044-HUCK, ECF No. 3.[1]

11. Pearson was arrested in December 2008 in Costa Rica following his indictment in the United States. On the same day that Pearson was arrested, Costa Rican law enforcement officers conducted a search of Pearson's office and telemarketing room in Costa Rica pursuant to a formal request by the United States government.

12. On January 26, 2009, Pearson was transferred to fugitive status in his criminal case. Notice Placing Defendants on Fugitive Status, *United States v. Jeffrey Allen Pearson*, 08-cr-21044-HUCK, ECF No. 11. Pearson remains on fugitive status.

13. Bank records obtained in the United States and Costa Rica, as well as documents seized during the search of Pearson's office, show that during the conspiracy period Pearson sent large amounts of money to bank accounts in the Bahamas. The records show that funds from victims of Pearson's fraud scheme typically were wired through U.S. banks to bank accounts in Costa Rica associated with Pearson or his companies. The records show that part of the victim money later was directed to an account controlled by Pearson at Caledonia Corporate Management Group in the Bahamas.

14. For example, the records show that approximately $220,000 from the Costa Rican bank account associated with Twin Peaks that received victim funds was wired to Caledonia in various amounts in 2006.

15. The records further show that wires totaling approximately $157,000 were sent in 2007 from a Premier Cards account in Costa Rica, which also received victim funds, to a bank

---

[1] On January 13, 2009 a federal grand jury returned a superseding indictment against Pearson. *See* Superseding Indictment, *United States v. Jeffrey Allen Pearson*, 08-cr-21044-HUCK, ECF No. 3. There were minor changes to the Indictment, such as adding overt acts to the conspiracy. *See id.*

4

account in Panama controlled by ICF Holdings Limited ("ICF Holdings"), a Bahamian company Pearson incorporated in 2005. At least $119,995 of that money then was transferred to the Caledonia account. Two other wire transfers totaling approximately $50,000 also were sent in 2007 from a Premier Cards bank account to the Caledonia account.

16. The records show that by the end of 2007, the Caledonia account held at least $800,000 in funds traceable either to individual victims or generally to Pearson's fraudulent companies. The records further show that this money in the Caledonia account was transferred over time to the Defendant Account, which Pearson also held in the name of FCI Holdings.

17. Bank records show that Pearson was the sole signatory listed in opening documents for the Defendant Account, and the only owner listed for FCI Holdings.

18. The funds in the Defendant Account are proceeds of the fraud and/or funds commingled with fraud proceeds, which served to conceal or disguise the nature, source, ownership, or control the proceeds of Pearson's telemarketing fraud scheme.

## IV. BASIS FOR FORFEITURE

19. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. § 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

20. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

21. A "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things: mail fraud and wire fraud.

22. Pursuant to 18 U.S.C. § 1341, it is a crime

to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

23. Pursuant to 18 U.S.C. § 1343, it is unlawful

to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

**FIRST CLAIM**
**Proceeds of Mail and Wire Fraud**
**(18 U.S.C. § 981(a)(1)(C))**

24. The factual allegations in paragraphs 1 to 18 are re-alleged and incorporated by reference herein.

25. As set forth above, the Defendant Account constitutes or was derived from proceeds traceable to a mail or wire fraud offense or a conspiracy to commit such offense.

26. Accordingly, the Defendant Account is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Property Involved in Money Laundering Conspiracy
### (18 U.S.C. § 981(a)(1)(A))

27. The factual allegations in paragraphs 1 to 18 are re-alleged and incorporated by reference herein.

28. As set forth above, the Defendant Account was involved in transactions or attempted transactions in a conspiracy to commit an offense in violation of 18 U.S.C. § 1956, and/or constitute property traceable to such property.

29. Accordingly, the Defendant Account is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**WHEREFORE**, Plaintiff, the United States of America, requests that this Honorable Court issue a warrant for the arrest of the Defendant Account; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Account; that the Defendant Account be forfeited and condemned to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: /s/ Nicole Grosnoff
Nicole Grosnoff
Assistant United States Attorney
Court ID No. A5502029
Nicole.s.grosnoff@usdoj.gov
U.S. Attorney's Office
99 Northeast Fourth Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9294
Facsimile: (305) 536-4089

## VERIFICATION

I, Vivian Guerrero, hereby verify and declare, under penalty of perjury, that I am a Postal Inspector with the United States Postal Inspection Service and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Postal Inspector for USPIS.

Executed on this 23rd of October 2020.

Vivian Guerrero
Postal Inspector, USPIS